IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DENISE HORNE,                    )
                                 )
        Plaintiff,               )
                                 )
vs.                              )   Case No. 10-cv-606-TLW
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
        Defendant.               )

OPINION AND ORDER

Plaintiff Denise Horne seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 416(i) & 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 12].

Plaintiff's application for disability insurance benefits was filed on April 15, 2008, alleging an onset date of November 30, 2004. [R. 85]. Administrative Law Judge Jeffrey Wolfe ("ALJ") held a hearing on September 14, 2009. [R. 24]. On January 28, 2010, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the SSA. [R. 12]. The Appeals Council denied review on August 13, 2010. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981. On September 24, 2010, plaintiff filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence supports the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

**Background**

Plaintiff was born on November 10, 1946, and was 58 years old on the onset date of her alleged disability. [R. 133]. She graduated from high school, and completed a two year associate degree at Tulsa Junior College. [R. 75]. Plaintiff has prior relevant work as a customer service representative with Southwestern Bell Corporation ("SBC"), and as a debt collector and financial service representative with Commercial Financial Services and Eagle Credit Company. [R. 36]. Plaintiff alleges pain in her neck, shoulder, arm, and hand, secondary to degenerative disc disease; and pain in her left knee, secondary to degenerative joint disease, as impairments supporting her claim for disability. Plaintiff is 5'4" tall and weighs 180 pounds. [R. 238, 601].

The record contains a summary of plaintiff's statement of her ten year history of developing cervical spondylosis. In 1998, plaintiff purportedly injured her cervical spine in a motor vehicle accident and was treated by Michael Farrar, D.O. [R. 832]. On November 16, 2000, plaintiff purportedly injured her right hand, right index finger and cervical spine while working at Metris Companies, when an elevator closed on her. [R. 726, 832]. On December 28, 2000, plaintiff contends she had an accident at home which injured her neck and left shoulder. [R. 726]. In 2006, while training for her job at SBC, plaintiff contends she injured her neck from looking up for an extended time at an elevated computer screen. She left work and went to the emergency room

complaining of neck pain. Plaintiff initially sought care with her chiropractor, Brad Hayes, D.C. She later consulted an orthopedic specialist, Randall Hendricks, M.D. Dr. Hendricks recommended physical therapy for two months, which caused her some improvement. [R. 832]. After several additional attempts at conservative treatment, on September 19, 2006, plaintiff underwent cervical fusion at C5-6 and 6-7. [R. 335]. This surgery was followed by rehabilitation including physical therapy, traction, and an exercise plan. On February 12, 2007, Dr. Hendricks determined that plaintiff had reached maximum medical improvement and released her to return to work, without restrictions. [R. 315]. Plaintiff did not return to work. She filed a workers' compensation action, which ultimately settled. [R. 229]. SBC terminated plaintiff's employment, and plaintiff filed an action against SBC for wrongful termination. Plaintiff seeks disability benefits contending that the cervical fusion failed to relieve pain in her neck, left shoulder, and hand. She also complains of pain in her left knee. [R. 52]. From November 10, 2003 through September 30, 2009, plaintiff regularly received chiropractic treatments from Dr. Hayes.

### Decision of the ALJ

The ALJ applied the 5-step sequential evaluation outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).[1] He found that plaintiff had not been employed since November 30, 2004, the alleged disability onset date. [R. 14]. Her severe impairments were determined to be: degenerative disc disease, status post fusion at C5-6 and C6-7; degenerative joint disease; and

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

obesity. [R. 14]. The ALJ found that plaintiff's impairments, singly and in combination, did not meet or equal any one of the listed impairments. He found that plaintiff had the physical residual functional capacity ("RFC") to perform light exertional work.[2] The ALJ specifically adopted the functional limitations set forth in the RFC assessment by Luther Woodcock, M.D, an agency consultative physician. [R. 605-612]. The ALJ concluded by finding that plaintiff could perform her past relevant work as a customer service clerk and collections clerk. [R 18]. This finding was made at step- 4 in the five step inquiry.

## Discussion

It is plaintiff's burden to prove her alleged disability at step-1 through step-4 of the sequential evaluation. To do so, plaintiff must show she is unable to return to the particular work she performed within the past 15 years and to her former employment as that work is generally performed throughout the national economy. Andrade v. Secretary of Health & Human Services, 985 F.2d 1045, 1051 (10th Cir. 1993). To prove a disability, the plaintiff must establish a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of her alleged disability. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or

---

[2] RFC is defined as the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs. 20 C.F.R. pt. 404, subpt. P, App. § 200.00(c). Light exertional work is defined as the ability to lift no more than 20 pounds at a time with frequently lifting or carrying up to 10 pounds, standing or walking for approximately 6 hours in an 8 hour day, sitting most of the time, with some pushing and pulling of arm and leg controls. 20 C.F.R. § 404.1567.

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508.

Plaintiff raises two issues on appeal.

1. Whether the ALJ failed to accord proper weight to the opinion of her chiropractic physician Dr. Brad Hayes.

2. Whether the ALJ erred in failing to give greater weight to the opinions of Jim Martin, M.D. and Gary Lee, M.D.

[Dkt. # 21 at 3].

As her first assignment of error, plaintiff contends the ALJ erred in not considering the opinion of her chiropractor, Dr. Hayes, in assessing the severity of her impairments and in determining how her impairments affect her ability to work. Plaintiff cites 20 C.F.R. § 404.1513 and SSR 06-03p. Under the regulations, in assessing the limitations caused by an alleged disability, the ALJ must consider all of the available evidence in the individual's case record. This includes "acceptable medical sources" and "other sources." "Acceptable medical sources" include licensed physicians, psychologists, optometrists, podiatrists and speech-language pathologists. See 20 C.F.R. § 404.1502. "Other sources" not considered "acceptable medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. See 20 C.F.R. § 404.1513(d). The ALJ may rely only on "acceptable medical sources" for the following purposes: (1) to establish the existence of a medically determinable impairment, 20 C.F.R. § 404.1513(a); (2) for a medical opinion, 20 C.F.R. § 404.1527(a)(2); and (3) as treating sources whose medical opinions may be entitled to controlling

5

weight. 20 C.F.R. § 404.1527(d). The ALJ may use evidence from "other sources" only to show the severity of the individual's impairments and how those impairments affect the individual's ability to function. In other words, information from "other sources" cannot be used to determine an impairment, provide an opinion, or be the controlling source. SSR 06-03p.

In the subject case, the record is not lacking in objective medical evidence, and the ALJ relied on this evidence in determining the severity of plaintiff's impairments. As previously stated, the ALJ determined plaintiff's severe impairments to be degenerative disc disease, degenerative joint disease, and obesity. [R. 14]. The ALJ, in supporting his determination as to the severity of plaintiff's impairments, stated:

> An MRI of the cervical spine on February 15, 2005, showed ruptured disc at C5-6 and C6-7, and degenerative disc disease (Exhibit 2F, pages 27-28; Exhibit 18F, pages 5-6).
>
> On September 19, 2006, Ms. Horne underwent fusion at C5-6 and C6-7 (Exhibit 1F; Exhibit 2F, page 29). X-ray of the thoracic spine on September 14, 2007, showed degenerative disc disease at multiple levels (Exhibit 5F, page 37). X-ray of the left knee on April 11, 2008, showed degenerative changes (Exhibit 5F, page 34). Ms. Horne is medically obese at 180 pounds (Exhibit 7F).

[R. 14]. Because the record contains objective medical evidence to support the ALJ's decision as to the severity of plaintiff's impairments, the ALJ did not err in failing to rely on less persuasive "other source" evidence for this determination.

Plaintiff also contends the ALJ erred in not relying on the opinion of her chiropractor in determining how plaintiff's impairments affect her ability to function. In the medical source statement dated August 2, 2009, prepared by Dr. Hayes, he opined that plaintiff's physical functional

capacity was limited to sedentary work. [R. 857].[3] Dr. Hayes' explanation for his evaluation was limited, stating only that plaintiff has "knee and back condition - exertion causes her discomfort & worsening of condition." [R. 858]. Dr. Hayes also provided a letter dated November 12, 2008. He stated he treated plaintiff for pain in her neck, back, knees, and hips. He opined that plaintiff's condition, "results in her not being able to sit for prolonged periods of time, or stand for prolonged periods of time. She must change positions frequently and she must avoid prolonged walking as well as walking up stairs due to the condition of the knees." [R. 636]. Dr. Hayes concluded that his treatments give plaintiff significant symptom relief, but her condition returns with activities. [R. 636].

Contrary to plaintiff's contention, the ALJ did consider Dr. Hayes' opinion. The ALJ rejected Dr. Hayes' conclusion that plaintiff could perform only sedentary work and could not sit for long periods of time. The ALJ found Dr. Hayes' opinion contrary to the objective medical evidence, the opinion of her treating specialist and plaintiff's admissions of daily activities. First, the ALJ found that Dr. Hayes' opinion directly contradicted the opinion of her treating specialist Dr. Hendricks, who opined on February 12, 2007, that plaintiff had the capacity to return to her former employment without restriction. Dr. Hendricks rendered his opinion following plaintiff's cervical fusion and rehabilitation. [R. 16]. Second, plaintiff claims her incapacity to work is caused by symptoms of pain, which is a subjective factor. In resolving conflicting evidence, the ALJ found that plaintiff's testimony regarding the limiting effect of her pain was not entirely credible. [R. 15].

---

[3] Specifically, Dr. Hayes opined that plaintiff could lift 10 pounds occasionally; stand and/or walk at least 2 hours in an 8 hour day; sit for less than 6 hours in an 8 hour day; was limited in her ability to push and/or pull in her lower extremities; should never climb, stoop, crouch or crawl; and should avoid certain environmental extremes such as extreme cold and extreme heat. [R. 857-58].

Significantly, plaintiff does not challenge the ALJ's credibility determination; yet, Dr. Hayes' opinion was based, in large part, on plaintiff's unsupported subjective statements as to the severity of her pain. The ALJ did not err in his resolution of this conflicting evidence. Third, the ALJ relied on objective medical evidence as to plaintiff's functional capacity. The ALJ said:

> On October 2, 2006, Ms. Horne was found to have normal motor strength and had no demonstrable sensory deficits (Exhibit 1F, page 8, Exhibit 17F, page 5). On November 1, 2006, Ms. Horne denied radicular complaints (Exhibit 1F, page 4; Exhibit 17F, page 6). On December 16, 2006, Ms. Horne denied radicular pain and had no paresis or sensory deficits (Exhibit 1F, page 3; Exhibit 17F, page 7). A physical examination on June 11, 2008, showed a full range of motion of the thoracic and lumbar spines, negative straight leg raising, and normal gait (Exhibit 7F).

[R. 16]. Finally, the ALJ relied on plaintiff's own admissions of daily activities that conflicted with Dr. Hayes' opinion. The ALJ found:

> Ms. Horne's actual activities belie her allegations of disability. On May 3, 2007, Ms. Horne was babysitting her grandchildren (Exhibit 5F, Page 72). On May 30, 2007, Ms. Horne had just returned from a trip (Exhibit 5F, page 65). On September 13, 2007, physical therapy personnel stated that Ms. Horne had been inconsistent with her therapy attendance and had been **"actively traveling the US"** (Exhibit 5F, page 52). Ms. Horne testified that she goes to Arkansas "a couple times a year" to a 'time share' they have there. This evidence shows that Ms. Horne is more active than alleged and does not suffer to the extent now alleged.

[R. 16] (emphasis in text). Thus, the ALJ applied the correct legal standard, by acknowledging the extended length of plaintiff's chiropractic treatments, but the limited use of "other sources," as evidence to consider only the severity of the impairment and ability to function. [R. 16]. The ALJ concluded that Dr. Hayes' opinions were inconsistent with the objective medical evidence and the opinion of her treating specialist, which he properly afforded greater weight. [R. 17]. Thus, the Court finds that the ALJ did not err in the limited weight he gave to the opinion of plaintiff's chiropractor.

As her second assignment of error, plaintiff contends the ALJ erred in failing to give greater weight to the opinions of Jim Martin, M.D. and Gary Lee, M.D. Dr. Martin was plaintiff's workers' compensation evaluating physician. The ALJ addressed Dr. Martin's opinion:

> Ms. Horne underwent a medical evaluation in connection with her workers' compensation claim on February 15, 2005 and March 13, 2007. Dr. Martin stated that Ms. Horne was "temporarily totally disabled" since December 1, 2004 (Exhibit 19F). Such statements in the context of a state workers' compensation claim, are not dispositive of a claim made under Social Security. In a workers' compensation evaluation, the issue is a claimant's capacity to perform work existing with a particular employer.
>
> By contrast, under Social Security, the issue is Ms. Horne's residual functional capacity to perform work that exists in the much broader, national economy. While a workers' compensation finding of temporary total disability may have some value in assessing the residual functional capacity of a Social Security claimant, it cannot be given controlling weight. Accordingly, the undersigned gives only some weight to Ms. Horne being on temporary disability pursuant to state law.

[R. 17]. The record shows that Dr. Martin's contact with plaintiff related solely to evaluating her for workers' compensation purposes. Dr. Martin was not one of plaintiff's treating physicians. When a doctor is a "treating physician," the ALJ must determine whether the opinion is entitled to controlling weight, and if not, whether it is entitled to deference and provide good reason for the weight assigned to the opinion. See Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003). Under the regulations, a treating physician is someone who either presently, or in the past, has provided medical treatment to a disability claimant in the context of an ongoing treatment relationship. 20 C.F.R. § 404.1502. Dr. Martin is a nontreating source. The ALJ did not err in failing to evaluate Dr. Martin's opinion in the context of the treating physician rule. The ALJ stated that he considered Dr. Martin's opinion that plaintiff was temporarily totally disabled in his 2005 evaluation, but the ALJ gave Dr. Martin's opinion only "some weight," because it was in conflict with other substantial

evidence that the ALJ highlighted in his decision. Thus, the Court does not accept plaintiff's claim of error.

Plaintiff also contends the ALJ erred in not giving greater weight to Dr. Lee's medical source statement. The ALJ noted that Dr. Lee completed a medical source statement on August 28, 2009, after having seen plaintiff on "only one occasion, August 19, 2009," and that Dr. Lee's opinion only addressed plaintiff's residual functional capacity. The ALJ properly noted that the issue of residual functional capacity is one reserved to the ALJ, by SSR 96-5p. As such, even a treating source opinion on the reserved issue of an RFC assessment is given no special weight, because that assessment must be based upon consideration of all relevant evidence in the case record. Id. The ALJ stated that he "carefully considered" Dr. Lee's opinion, he did not give it controlling weight, because it was inconsistent with the other substantial evidence noted in his decision. Dr. Lee had no longitudinal history of treating plaintiff, and greater weight was given to Dr. Hendricks in his capacity as plaintiff's treating orthopedic surgeon. [R. 17]. These are all valid reasons for the ALJ to afford less weight to the opinion of Dr. Lee.

To support his step 4 determination that plaintiff could perform her past relevant work, and an RFC assessment of light exertional work, the ALJ relied on diagnostic testing, plaintiff's admissions of activities of daily living, the opinion of her treating orthopedic specialist, and the physical RFC assessment prepared by agency consultant Luther Woodcock, M.D., as confirmed by medical consultants Clinton Maxwell, M.D., and Kenneth Wainner, M.D. [R. 17]. Plaintiff is essentially asking the Court to reweigh the evidence, which this Court is not permitted to do.

## Conclusion

The Court finds that there is substantial evidence in the record to support the ALJ's decision.

The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 12th day of March, 2012.

_____
T. Lane Wilson
United States Magistrate Judge